UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2004 MAR -8  P 4: 49
U.S. DISTRICT COURT
HARTFORD, CT.

VINCENT ARDIZZONE : CASE NO: 3:02-CV-1658(AWT)
    PLAINTIFF

-AGAINST- : March 7th, 2004

CONNECTICUT PSYCHIATRIC

SECURITY REVIEW BOARD :
    DEFENDANT

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### BACKROUND

This case was filed with this court on September 17th, 2002, in accordance with the Federal Declaratory Judgments Act, 28 U.S.C., Section 2201. The plaintiff filed a Summary Judgment dated, February 11, 2003. The defendant the Psychiatric Security Review Board filed a Motion to Dismiss of Stay Action. On September 23, 2003, the Court ruled and ordered the defendants' Motion to Dismiss denied without prejudice, the Motion to Stay was granted, the plaintiff's Motion for Summary Judgment was denied without prejudice. The Court, Alvin W. Thompson, United States District Court Judge order the parties to file within 30 days, setting forth a proposal (or their prospective proposals) as to how this case should proceed.

Both parties complied with the order. The defendant in response to the Court's request for proposals as to how this case should proceed, the defendant proposed the following:

1. The Defendant supported the District Court's denial of the plaintiff's Summary Judgment Motion and opposed the plaintiff's proposal to "reinstate" said motion;

2. Based on the Dyous decision and the plaintiff's decision not to appeal the Superior Court's dismissal of his administrative appeal, the defendant no longer wished to advance on the three basis for abstention set forth in it's Motion to Dismiss or Stay action in this case; and

3. The defendant recommends the Court requiring the filing of any dispositve motions in this case by February 1, 2004.

4. To this date the defendant has failed to file any dispositve motions in this case.

5. The Court has lifted the stay.

6. The plaintiff wishes and requests this court to hear his amended Motion for Summary Judgment.

### STATEMENT OF THE CASE

This case was brought to this court as a declaratory Judgment filed under the Federal Declaratory Judgments Act, 28 United States Code, Section 2201. The plaintiff was a resident of Whiting Forensic Division of Connecticut Valley Hospital in Middletown, Connecticut. The plaintiff is aggrieved by a violation of his rights to due process guaranteed by the Fourteenth Amendment to the United States Constitution. He brought this case to this court seeking a declaration of his Federal Constitutional rights in regards to his confinement under conditions of maximum security arising out of State Law, in violation of the Connecticut General Statutes, Section 17a-599.

As set forth in the accompanying declaration the plaintiff Vincent Ardizzone was ordered transferred to Whiting Forensic Division of Connecticut Valley Hospital, a maximum security mental health facility operated by the Connecticut Department of Mental Health. The defendant the Connecticut Psychiatric Security Review Board ordered the plaintiff confined in maximum security based strictly on allegations that he was violating hospital rules and absent the any evidence that he was "so violent." The Connecticut General Statutes, Section 17a-599 requires that:

**"At any time the court or the board (Connecticut Psychiatric Security Review Board) determines that the acquittee is a person who should be confined, it shall make a further determination of whether the acquittee is so violent as to require confinement under conditions of maximum security."**

On December 14, 2001, and on May 3, 2002, a hearing was held on the status of the plaintiff. During the hearing of December 14, 2001, the board ordered the plaintiff confined under conditions of maximum security, and on May 3, 2002, the board further ordered the continued confinement of the plaintiff under conditions of maximum security absent any evidence that the plaintiff was so violent.

4

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VINCENT ARDIZZONE            :    CASE NO: 3:02-CV-1658)
      PLAINTIFF

  -AGAINST-                 :    March 7, 2004

CONNECTICUT PSYCHIATRIC

SECURITY REVIEW BOARD        :
      DEFENDANT

## DECLARATION IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

VINCENT ARDIZZONE declares under penalty of perjury:

1. I am the plaintiff in this case. The complaint alleges that on August 20, 1998, I was transferred to a less secure setting, the Dutcher Services from a maximum security setting operated by the Connecticut Department of Mental Health after a finding by the Connecticut Psychiatric Security Review Board that I was no longer "so violent" in accordance with the Connecticut General Statutes, Section 17a-599.

2. During the time I was in the Dutcher Services, I was actively engaged in treatment and not violent.

3. On December 14, 2001, the Connecticut Psychiatric security Review Board held a hearing in regards to my status pursuant to Connecticut General Statutes, Section 17a-585.

4. At the hearing on December 14, 2001 my treating psychiatrist testified and concluded that I was an acquittee who has psychiatric disabilities to the extent that my discharge from the jurisdiction of the Connecticut Psychiatric Security Review Board or conditional release from the hospital would constitute a danger to myself or others and I could not be adequately controlled with available supervision on a conditional release.

5. My treating psychiatrist did not conclude or recommend in accordance with the Connecticut General Statute, Section 17a-599 that I was "so violent" as to require confinement under conditions of maximum security. (See exhibit A, transcript of hearing dated December 14, 2001).

5

6. On December 14, 2001, defendant Robert Berger agreed to continue the matter to a later date; however, immediately after the testimony by my treating psychiatrist the defendant Robert Berger, prior to any formal deliberations by a full quorum of the Connecticut Psychiatric Security Review Board, ordered me to be immediately confined in maximum security. (See exhibit A, transcript of hearing dated December 14, 2001).

7. At the hearing that commenced on May 3, 2002, which was a continuation from the hearing of December 14, 2001, none of the testimony by psychiatrists Dr. Johnson, Dr. Amble, Dr. Lah, Dr. Zeman, or Dr. Hillbrand contained any evidence that I was so violent. (See exhibit B, transcript of hearing dated May 3, 2002).

8. On June 7, 2001, the Connecticut Psychiatric Security Review Board issued a memorandum of decision finding that I was "so violent" that I required confinement within a maximum security setting. (See exhibit C, Memorandum of Decision dated June 7, 2002).

9. I am confined in a facility for individuals that are violent; this deprives me of treatment in the least restrictive environment in violation of the Fourteenth Amendment of the United States Constitution.

10. For the reasons stated in the brief submitted with this motion, these undisputed facts establish that the defendant, the Connecticut Psychiatric Security Review Board, denied my right to procedural and substantive due process of law. Accordingly, I am entitled to summary judgment on my procedural and substantive due process claims.

Pursuant to 28 U.S.C., Section 1746, I declare under penalty of perjury that the foregoing is true and correct.

X *Vincent Ardizzone*
Vincent Ardizzone
Dutcher Hall
Connecticut Valley Hospital
351 Silver Street
Middletown, Connecticut 06457

<u>ARGUMENT</u>
<u>POINT I</u>

<u>CONNECTICUT STATE LAW CREATES A LIBERTY TO BE FREE FROM MAXIMUM SECURITY CONFINEMENT AND THE PLAINTIFF WAS DEPRIVED OF SUBSTANTIVE DUE PROCESS.</u>

The plaintiff who is an insanity acquittee has a liberty created by state statute to be free from maximum-security confinement. Section 17a-599 of the Connecticut General Statutes reads as follows; <u>"At any time the court or the board (Connecticut Psychiatric Security Review Board) determines that the acquittee is a person who should be confined, it shall make a further determination of whether the acquittee is so violent as to require confinement under conditions of maximum security."</u>

A state law creates a liberty or property entitlement if it limits the discretion of officials. <u>Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 462. 109 s.ct. 1904 (1989).</u>

The most common way of limiting official's discretion is by using mandatory language in connection with requiring substantive predicates. <u>Hewitt v. Helms, 459 U.S. 460, 472, 103 s.ct. 864 (1983).</u> Mandatory language often means words like "shall" "will" or "must". Hewitt v. Helms, 459 U.S. at 371; see also Board of Pardons v. Allen, 482 U.S. at 378 ("statutes with "shall" and "if" "when", or "subject to" have the same effect as statutes with "shall" and "unless").

Section 17a-599 of the Connecticut General Statutes contains mandatory language and a substantive predicate, "it shall make a further determination of whether the acquittee is <u>so violent</u> as to require confinement under condition of maximum security."

In order for the plaintiff's condition of confinement to qualify as a constitutionally protected liberty, a Connecticut statute, judicial decree or regulation must assure the interest. <u>Wheway v. Warden</u>, 215 Conn. 418, 432 (1990).

7

The plaintiff has a protected liberty interest to be placed in the least restrictive environment. Insanity acquittees have no recognized Federal Constitutional right to be placed in the least restrictive environment. See Kulab v. Berkelhammer, 88 F.3d 63, 73 (2nd. Cir. 1996) "However, a state may create such a liberty interest protected under the Fourteenth Amendment by regulations, statutes, or court orders mandatory in character." A state may give rise to a liberty interest subject to due process protections based on the use of mandatory language coupled with "substantive predicates", raising a presumption that a designated right or privilege will be granted when the designated findings are made. See Vinceno V. Warden, 26 Conn. App. 132, 138-40, 599 A.2d 31 (1991), citing Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1 (1979) and Board of Pardons v. Allen, 482 U.S. 369 (1987). See also Sandin v. Conner, 515 U.S. 472, 479 (1995) ("[T]he word shall in the statute created a legitimate expectation." A liberty interest protected by the due process clause of the Fourteenth Amendment may arise out of state law. Vitek v. Jones, 445 U.S. 480, 488-90 (1980).

General Statutes, Section 17a-599 is mandatory as the statute includes the word "**shall**" in its directive. Once the court or board determines that the acquittee is a person who should be confined, a further determination "**shall**" be made as to "whether the acquittee is **so violent** as to require confinement under conditions of maximum-security." Section 17a-599 contains both the required mandatory language and substantive predicate. As this statute is mandatory, it creates a right, a protected liberty interest of the plaintiff, to be confined in the least restrictive setting. As such, a denial of this right would be a constitutional deprivation.

Other states have found that a person is entitled to be confined to the least restrictive setting either through statutes or common law. The District of Columbia recognizes that "one who by reason of insanity is acquitted of a crime and…is committed to a mental hospital is entitled to not only treatment, but to treatment in the least restrictive alternative consistent with the legitimate purposes of a commitment." Jackson v. United States, 641 A2d 454, 457 (D.C., 1994). The "least restrictive language" means "that the treatment must be the best treatment for the acquittee that protects the public safety." Id. (emphasis added).

Illinois has codified a right to the least restrictive setting in section 2-102 (a) of the mental health code which states that "[a] recipient of services shall be provided with adequate and humane care and services in the least restrictive environment." 405 ILCS 5/2-102(a) (2003). A111 "The mere fact that plaintiffs have been involuntarily

committed as NGRI acquittees does not deprive them of substantive liberty interests under the fourteenth amendment." C.J. v. Dept. of Mental Health and Developmental Disabilities, 296 Ill. App. 3d 17, 27, 693 N.E. 2d 1209, 1215 (1998) (citing Vitek v. Jones, 445 U.S. 480, 491 (1979). "Liberty from bodily restraint always has been recognized as the core of the liberty protected by the due Process Clause from arbitrary governmental actions. C.J., 693 N.E. 2d at 1215 (quoting Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 18 (1979) (Powell, J., concurring in part and dissenting in part). Moreover, "[I]n Foucha v. Louisiana, the supreme Court recognized that freedom from bodily restraint is a liberty interest that applies to insanity acquittees. Foucha v. Louisiana, 504 U.S. 71, 80 (1992)." C.J., 693 N.E. 2d at 1216. Even when acquittees are found to be in need of a secure placement, the "secure setting is in effect the least restrictive environment permitted for NGRI acquittees under the law...." C.J., 693 N.E. 2d at 1213.

In New York, the case of insanity acquittees, the legislature has outlined procedures for insuring that people committed are not held in a secure facility when they can be safely treated in a less restrictive environment. People v. Betances, 176 Misc. 2d 66, 71, 671 N.Y.S. 2d 930 (1998). "There is no logical reason to believe that, in prescribing care and treatment at an appropriate institution, the legislature intended harsher treatment for a patient who is merely accused of a nonviolent criminal act, but not proven to have committed any crime at all, than one found not responsible by reason of mental disease or defect." Id.


In <u>Vitek v. Jones 445 U.S. at 483 n.1. a statute provided that if a doctor finds that a prisoner has a mental disease or defect that cannot be treated in a prison, the director may transfer her for treatment.</u> This language along with prison practice created an "objective expectation" that the prisoner would not be transferred unless a doctor found that she had such a mental condition. Thus, a liberty interest was created. Accord, Mayes v. Trammell, 751 F.2d 175, 178 (6th Cir. 1984) (regulation stating that parole release "may" be denied "if" certain conditions exist is the same as one saying parole "shall" be granted "unless" those conditions exist).

## ARGUMENT
## POINT II

The defendant denied the plaintiff procedural due process as well. The basic requirement of due process is the right to notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." <u>Logan v. Zimmerman Brush Co.</u>, 455 U.S. 422, 579, 95 S.Ct. 111148 (1982). <u>Goss v. Lopez,</u> 419 U.S. 565, 579, 95 S. Ct. 729 (1975).

The defendant held a hearing in accordance with the Connecticut General Statutes, Section 17a-585. The defendant failed to give notice that the defendant was considering maximum-security confinement. The plaintiff filed two motions with the defendant requesting a continuation and a separate examination. The defendant, Robert Berger, Chairman of the Connecticut Psychiatric Security Review Board made the following comments during the hearing on December 14th, 2001, that clearly show a violation of procedural due process.

The following is from the transcript of the December 14th, 200,1 hearing page 5, lines 7 through 24, page 6, lines 1 through 10:

The transcript is on file at the Court as well as on file with counsel for defendant.

Plaintiffs' defense counsel, **Ms. McAlpine**: "My second request is that the Board does not deter any decision until after the independent examiner has had the opportunity to examine Mr. Ardizzone. And also this hearing was called less than two weeks ago, as I recall, and if we could just put on the record the date that the hearing was actually scheduled."

**Chairman Berger, defendant:** "I'm sorry, I didn't - -"

**Ms. McAlpine:** "I'm sorry, the date that the hearing was actually scheduled."

**Chairman Berger, defendant:** "I don't understand the nature of your question."

**Ms. McAlpine:** "The date that - - not the date of the hearing, but the date that the hearing was scheduled."

**Chairman Berger, defendant:** "The date the hearing was scheduled was the date I received the additional report indicating what Mr. Ardizzone's conduct was in the hospital. I do not recall what that was - -"

10

**Ms. Lewis: Executive Director of the Connecticut Psychiatric Security Review board:** "It was by the Board - - it was the Board's meeting November 30."

**Chairman Berger, defendant:** "The minute I read that report, I said we need to have a hearing. As a matter of fact, I'll be honest with you, <u>my initial reaction was why isn't Mr. Ardizzone in Whiting Forensic Institute right now, and Miss Lewis informed me that that couldn't be done without a hearing, and I said hold a hearing. Does that answer your question ?</u>"

The following is also from the transcript of the hearing of December 14th, 2001, which clearly shows that the procedural due process rights of the plaintiff were violated. Page 59, lines 10 through 19, and page 60, lines 1 through 7.

**Chairman Berger, defendant:** "Thank you. We're going to continue this matter for the purpose of hearing the independent evaluator's testimony at some future time. <u>But in the interim, despite defense counsel's request, the Chair by the power that is vested in him, after consultation with the other members of the Board present, is going to declare that Mr. Ardizzone be transferred immediately from CVH to Whiting Forensic and that he be taken into custody right now for that purpose.</u>"

**Chairman Berger, defendant:** "With that, we thank you all for attending - -"

**Ms. McAlpine:** " Well, may I - -"

**Chairman Berger, defendant:** - - "The hearing is continued - -

**Ms. McAlpine:** "Before you close, may I ask, Chairman Berger, when the Board has had the opportunity to deliberate on this given the fact that the testimony was just - -"

**Chairman Berger, defendant:** "We deliberated on this before and I just asked them whether they would approve my decision to do this, and they indicated they did." It's obvious from the record that the plaintiff was deprived of a liberty without due process.

A. At the hearing on December 14th, 2001, the plaintiff's treating psychiatrist testified and concluded that the plaintiff was an acquittee who has psychiatric disabilities to the extent that his discharge from the jurisdiction of the Connecticut Psychiatric Security Review Board or conditional release from the hospital would constitute a danger to himself or others and he could not be adequately controlled with available supervision on a conditional release.

B. The plaintiff's treating psychiatrist did not conclude or recommend in accordance with the Connecticut General Statute, Section 17a-599 that the plaintiff was "so violent" as to require confinement under conditions of maximum security. (See exhibit A, transcript of hearing dated December 14, 2001).

C. During the time the plaintiff was in the Dutcher Services, he was actively engaged in treatment and not violent.

D. On December 14, 2001, defendant Robert Berger agreed to continue the matter to a later date; however, immediately after the testimony by my the plaintiff's treating psychiatrist the defendant Robert Berger, prior to any formal deliberations by a full quorum of the Connecticut Psychiatric Security Review Board, ordered the plaintiff to be immediately confined in maximum security. (See exhibit A, transcript of hearing dated December 14, 2001).

The defendant the Connecticut Psychiatric Security Review Board denied the plaintiff procedural and substantive due process when they rendered a decision on December 14, 2001, and on May 3, 2002 to confine the plaintiff under conditions of maximum security absent any evidence that he was so violent, and strictly based on allegations that the plaintiff was breaking hospital rules. That decision was clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; the decision was arbitrary and/or capricious and/or characterized by abuse of discretion and/or a clearly unwarranted exercise of discretion; the decision contains no factual basis to support the defendant's decision that Whiting Forensic Division is the least restrictive environment necessary for the plaintiff thereby depriving the plaintiff of the right to a meaningful review under principles of due process of law; the extent to which the defendant has construed "so violent as to require confinement under conditions of maximum security" to include the plaintiff within the class of individuals to which it applies violates Amendment Fourteen of the United States Constitution.

## CONCLUSION

For the forgoing reasons, the court should grant summary judgment on the defendant's liability to the plaintiff on his procedural and substantive due processes claims and enter a declaratory judgment stating:

1. That the defendant violated the plaintiff's procedural and substantive due process right's on December 14th, 2001, and on May 3rd, 2002.

2. Issue a binding legal statement as to the constitutional rights of the plaintiff in regards to his liberty to be in the least restrictive setting, especially the Dutcher Services in accordance with the Connecticut General Statutes, Section 17a-599.

3. Issue a binding and legal statement as to the constitutional rights of the plaintiff as to his liberty to be free from maximum-security unless it is evidenced that he is "so Violent" as to require maximum-security confinement in accordance with the Connecticut General Statutes, Section 17a-599.

Respectfully Submitted,

X *Vincent Ardizzone*
Vincent Ardizzone
Dutcher Hall
Connecticut Valley Hospital
351 Silver Street
Middletown, Connecticut 06457

13

## CERTIFICATION

I Vincent Ardizzone hereby certify that a copy of the amended Summary Judgment Motion was mailed to Michael Sullivan, Assistant Attorney General, Counsel for the defendant First Class Postage prepaid on March 7th, 2004.

x *Vincent Ardizzone*
Vincent Ardizzone
Connecticut Valley Hospital
Dutcher Hall
P.O. Box 351
Middletown, Ct. 06457