UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VINCENT ARDIZZONE<br>*Plaintiff,* | : | NO. 3:02 CV-1658 (AWT) |
| | : | |
| v. | : | |
| | : | |
| CONNECTICUT PSYCHIATRIC<br>SECURITY REVIEW BOARD,<br>*Defendant.* | :<br>: | APRIL 30, 2004 |

<u>MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the defendant Connecticut Psychiatric Security Board ("the PSRB") respectfully submits this memorandum of law in support of its motion for summary judgment. The defendant PSRB has included the affidavits of Ellen Weber (Executive Director of the PSRB) and Marilyn Smith-Cotterell (Forensic Coordinator of the Whiting Forensic Division of Connecticut Valley Hospital) in support of its Motion for Summary Judgment. For the reasons set forth below, the defendant's motion should be granted.

**<u>STANDARD FOR SUMMARY JUDGMENT</u>**

Under Rule 56(c), summary judgment shall be granted to the moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); see

1

also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). The burden of demonstrating that no factual dispute exists rests on the party seeking summary judgment. *Gallo v. Prudential Residential Servs., Ltd.* 22 F.3d 1219, 1223 (2d Cir. 1994). A factual issue is material if its resolution could affect the outcome of the dispute. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986); *Converse v. General Motors Corp.*, 893 F.2d 513, 514 (2d Cir. 1990).

**BACKGROUND:**

This is an action brought by the plaintiff, Vincent Ardizzone, against the defendant PSRB. The PSRB is a state agency established pursuant to Conn. Gen. Stat. § 17a-581. The PSRB has jurisdiction over "acquitees" as defined in Conn. Gen. Stat. § 17a-580, i.e. persons found not guilty by reason of mental disease or defect. The plaintiff seeks a declaratory judgment stating that his federal rights under the Fourteenth Amendment to the U.S. Constitution have been violated. Specifically he alleges that he was denied a liberty interest in being in a less restrictive environment and he was denied procedural due process. (Complaint, ¶¶ 17-18). The plaintiff has brought this action against the PSRB under 28 U.S.C. 2201 ("Declaratory Judgment Act").[1] The plaintiff also appears to name Robert Berger, John Ryan, Janet Williams, Sylvia Cancela and Susan Blair in their official capacities as defendants under the Declaratory Judgment Act

---

[1] It should be noted that the plaintiff filed an administrative appeal in state court challenging the same decision by the PSRB that is the subject of this lawsuit (*Ardizzone v. Psychiatric Security Review Board*, CV-02-0515841-S). That action was dismissed by Judge George Levine on September 10, 2003 relying on the reasoning of the state Supreme Court decision, *Dyous v. Psychiatric Security Review Board*, 264 Conn. 766 (2003). The *Dyous* decision had concluded that under state law there is no administrative appeal from the decision of the PSRB to transfer an acquitee to a maximum security facility. *Id.* at 775.

2

as well. (Complaint, ¶ 4). At all times relevant to the complaint, these defendants served as members of the PSRB. Affidavit of Ellen Weber, ¶ 4.

On January 12, 1993, the plaintiff was acquitted by reason of mental disease and defect of the charge of murder. On March 5, 1993, the plaintiff was committed to the jurisdiction of the PSRB by the Superior Court for a period of time not to exceed thirty-five years. Affidavit of Marilyn Smith Cotterell, ¶ 3. On August 20, 1998, the plaintiff was transferred from the Whiting Forensic Division of Connecticut Valley Hospital ("Whiting"), a maximum security mental health facility, to the less restrictive setting of Dutcher Services ("Dutcher"). Complaint, ¶ 6; Affidavit of Smith Cotterell, ¶ 4. Whiting and Dutcher both are located on the campus of Connecticut Valley Hospital ("CVH").

On December 14, 2001, the defendant PSRB held a hearing to review the plaintiff's status pursuant to Conn. Gen. Stat. 17a-585.[2] (Complaint, ¶8). Section 17a-585 requires the PSRB to conduct a review of each acquittee at least once every two years. Section 17a-585 also requires that "[a]t such hearing the board shall make a finding and act pursuant to section 17a-584." Section 17a-584 requires the PSRB to make a finding on the acquittee's mental condition and order one of three results: (1) to discharge the acquittee from the custody of the PSRB; (2) to conditionally release the acquittee; or (3) to continue the acquittee's confinement.

At the conclusion of the hearing on December 14, 2001, the defendant PSRB agreed to continue the hearing to allow the plaintiff's counsel to present an independent

---

[2] The plaintiff was represented by Attorney Susan McAlpine of the Public Defenders Office during this proceeding. The State of Connecticut was represented by Attorney Mary Galvin of the Chief State's Attorney's Office.

3

evaluation. The defendant PSRB also ordered Mr. Ardizzone immediately transferred from Dutcher back to Whiting pending the presentation of further evidence to the Board, based on the evidence presented at the hearing that the plaintiff represented a danger to other patients at Dutcher, (Complaint, ¶ 12; Affidavit of Ellen Weber, Attachment, p.1). On May 3, 2002, the defendant PSRB reconvened the hearing on the plaintiff's status to hear testimony from Dr. Peter Zeman, who was retained by the Public Defender's Office to do an independent evaluation of the plaintiff. Affidavit of Ellen Weber, Attachment, p. 1.)

On June 7, 2002, the defendant PSRB issued a Memorandum of Decision in which the PSRB concluded that the plaintiff should be confined within a maximum security setting. (Complaint, ¶ 16; Affidavit of Ellen Weber, Attachment, p. 4). The defendant PSRB found, based on the plaintiff's "violation of hospital rules and placing other persons, in particular more vulnerable psychiatric patients and potentially his minor aged child, in jeopardy, that he requires confinement in a maximum-security setting at this point in time. (Affidavit of Ellen Weber, Attachment, p. 4.) The PSRB also concluded that the plaintiff "has a psychiatric disability to the extent that his discharge or conditional release would constitute a danger to himself or others" and that the plaintiff "…is so violent that he requires confinement within a maximum-security setting". *Id.* The defendant PSRB also ordered Whiting to provide the PSRB with a report every six months on the plaintiff's mental condition, mental status, and course of treatment pursuant to Conn. Gen. Stat. § 17a-586. *Id.*

On November 25, 2003, the plaintiff was transferred from Whiting back to Dutcher and has remained there since that time. (Affidavit of Smith-Cotterell, ¶ 6).

4

The plaintiff alleges that the defendants' decision violated his rights under the Fourteenth Amendment to the United States Constitution by ordering the plaintiff confined in maximum security absent any evidence that he was "so violent" as to require such confinement. The plaintiff also alleges that the defendants confined him in maximum security without the opportunity to be heard and prior to any deliberation. The plaintiff seeks a declaratory judgment that the defendants' actions violated the Fourteenth Amendment, denied him a liberty interest in a less restrictive environment and denied him due process.

The defendants respectfully move that this case be dismissed because of the lack of subject matter jurisdiction under the Eleventh Amendment to the U.S. Constitution.

**ARGUMENT:**

### The Plaintiff's Action Against the State Defendants is Barred by the Eleventh Amendment of the U.S. Constitution

The plaintiff has brought this federal civil action against the defendant PSRB and the PSRB board members in their official capacities seeking declaratory relief that the past actions of the defendants have violated the laws and Constitution of the United States. The Declaratory Judgment Act of 1934 permits a federal court to "declare the rights of a party whether or not further relief is, or could be sought. Under this Act, declaratory relief may be available even though an injunction is not." *Community Health Care v. Mindeparle*, 69 F.Supp.2d 463, 471 (S.D.N.Y. 1999)(citing *Green v. Mansour*, 474 U.S. 64, 72 (1985). Whether or not to issue a declaratory judgment is within the sound discretion of the court. Id. However, the Eleventh Amendment and "applicable

5

principles governing the issuance of declaratory judgments forbid the award of a declaration that state officials prior conduct violated federal law." *Community Health Care*, 69 F.Supp.2d at 471-472. Here the plaintiff is seeking a declaration that the defendant's prior conduct, namely the PSRB's decision to confine the plaintiff to maximum security at Whiting violated federal law. This is not permissible and therefore the plaintiff's claims in this regard fail.

It is well settled that the Eleventh Amendment to the United States Constitution prohibits a party from suing a state for any relief in federal court. *Edelman v. Jordan*, 415 U.S. 651, 662, (1974); *Minotti v. Lensink*, 786 F.2d 83, 89-90 (2d Cir. 1986). See also *Atlantic Healthcare Benefits Trust v. Googins*, 2 F.3d 1,4 (2d Cir. 1993). Similarly, it is also well settled that a suit against a state official in his official capacity is in reality a suit against the state. As Justice Marshall remarked in *Kentucky v. Graham*, 473 U.S. 159 (1985), "[o]fficial-capacity suits…'generally represent only another way of pleading an action against an entity of which an officer is an agent,'" *Id.* at 165 (quoting *Monell v. New York City Dep't. of Social Services*, 436 U.S. 658, 690, n. 55, (1978)(Emphasis added). See also *Hafer v. Melo*, 502 U.S. 21 (1991); *Edelman v. Jordan*, 415 U.S. 614, 677 (1974); *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963)("The general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter.") *Dugan v. Rank*, 372 U.S. 609, 620 (1963)(suit against officials is, in fact, suit against state sovereignty if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration.") (emphasis added); *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 473 (1945)("We are of the opinion that petitioner's suit in the instant case against the department and the

individuals as the board constitutes an action against the State of Indiana."); *Galvin v. Lloyd*, 663 F. Supp. 1572, 1581 (D. Conn. 1987)

The only exception to this bar to suits against a state are claims against state officers for prospective injunctive relief based on an allegation of a federal constitutional violation. See *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 121 (1984); *Ex parte Young*, 209 U.S. 123 (1908). This exception does not extend to claims for monetary damages or any other form of retroactive relief. (Emphasis added) *Pennhurst*, 465 U.S. at 105 (declining "to extend the fiction of *Young* to encompass retroactive relief, for to do so would effectively eliminate the constitutional immunity of the State). As previously noted, on November 25, 2003, the plaintiff was transferred from Whiting back to Dutcher and has remained there since that time. (Affidavit of Marilyn Smith-Cotterell, ¶6). Because the plaintiff is no longer at Whiting, there can be no claim for prospective relief in this matter.

Here, the plaintiff has named the PSRB and the individual defendants in their official capacity and seeks a declaration that their past action violate federal law. The plaintiff alleges that the defendants violated his rights by ordering him confined to maximum security absent any evidence that he was "so violent" and without the opportunity to be heard and prior to any deliberation. The plaintiff asks this court to declare that such action violates the Fourteenth Amendment of the U.S. Constitution as well as his procedural and substantive due process rights. As previously noted, despite the plaintiff's claims, the defendant PSRB held a hearing on December 14, 2001 to review the plaintiff's status and mental condition prior to transferring him from Dutcher

to Whiting. It should also be noted that the plaintiff was represented by counsel at that proceeding.

The declaratory relief that the plaintiff seeks runs afoul of the Eleventh Amendment as it is against the State through a state agency and the defendant state officials and does not fall with the exception to the doctrine; i.e. seeking prospective injunctive relief against state officials for alleged violations of the federal constitution. See *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 121 (1984); *Ex parte Young*, 209 U.S. 123 (1908). Indeed, the plaintiff seeks a declaration regarding a *prior* action of the defendants and is therefore impermissibly seeking a form of retroactive relief. See *Community Health Care Association v. Mindeparle*, 69 F.Supp.2d 463, 476-467 (S.D.N.Y. 1999)(citing *Green v. Mansour*, 474 U.S. 64, 72 (1985)(barring retroactive declaratory relief). The bar of the Eleventh Amendment is one of subject matter jurisdiction. *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 99 n.8 (1984). The court must therefore dismiss this action for lack of subject matter jurisdiction.

## CONCLUSION

For all the foregoing reasons, the defendants respectfully request that this action be dismissed.

                                    RICHARD BLUMENTHAL
                                    ATTORNEY GENERAL

BY:      */s/ Michael Sullivan*
                Michael Sullivan
                Assistant Attorney General
                Federal Bar No. ct24981
                55 Elm Street
                P.O. Box 120
                Hartford, CT  06141-0120
                Tel:  (860) 808-5210
                Fax:  (860) 808-5385

Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VINCENT ARDIZZONE<br>*Plaintiff,* | : | NO. 3:02 CV-1658 (AWT) |
| | : | |
| v. | : | |
| | : | |
| CONNECTICUT PSYCHIATRIC<br>SECURITY REVIEW BOARD,<br>*Defendant.* | :<br>:<br>: | APRIL 29, 2004 |

### AFFIDAVIT OF MARILYN SMITH-COTTERELL

I, Marilyn Smith-Cotterell, having been sworn, deposes and says:

1. I am over eighteen years of age and believe in the obligation of an oath. This affidavit is based on my personal knowledge.

2. I am the Forensic Coordinator of the Whiting Forensic Division at the Connecticut Valley Hospital (hereinafter "Whiting"). I have been serving in that capacity since 1998.

3. Vincent Ardizzone is an acquittee who was committed to the jurisdiction of the Psychiatric Security Review Board (hereinafter "the PSRB") effective March 5, 1993 by operation of law pursuant to Conn. Gen. Stat. § 17a-580. This jurisdiction was based on the Ansonia/Milford Superior Court commitment for a period not to exceed thirty-five (35) years after he was acquitted by reason of mental disease and defect of the charge of Murder.

4. On August 20, 1998, Mr. Ardizzone was transferred from Whiting, a maximum security mental health facility, to the less restrictive setting of Dutcher Services at Connecticut Valley Hospital (hereinafter "Dutcher').

5. On December 14, 2001, by order of the PSRB, Mr. Ardizzone was transferred from Dutcher to Whiting.

6. On November 25, 2003, Mr. Ardizzone was transferred from Whiting to Dutcher. Mr. Ardizzone has remained at Dutcher since that transfer.

_____
Marilyn Smith-Cotterell

# Exhibit B

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VINCENT ARDIZZONE<br>*Plaintiff,* | : | NO. 3:02 CV-1658 (AWT) |
| | : | |
| v. | : | |
| | : | |
| CONNECTICUT PSYCHIATRIC<br>SECURITY REVIEW BOARD,<br>*Defendant.* | : | APRIL 29, 2004 |

## AFFIDAVIT OF ELLEN WEBER

I, Ellen Weber, having been sworn, deposes and says:

1. I am over eighteen years of age and believe in the obligation of an oath. This affidavit is based on my personal knowledge.

2. I am currently the Executive Director of the Psychiatric Security Review Board (hereinafter "PSRB"). I have been serving in that capacity since March 1, 2004.

3. Pursuant to Section 1-210 of the general statutes, I hereby attest that attached as Attachment A is a true and accurate copy of the PSRB's <u>Memorandum of Decision</u> regarding Mr. Vincent Ardizzone, dated June 7, 2002.

4.. At all times relevant to the complaint, Robert Berger, John Ryan, Janet Williams, Sylvia Cancela and Susan Blair served as members of the PSRB.

_____
Ellen Weber

STATE OF CONNECTICUT :

COUNTY OF HARTFORD :

Sworn and subscribed before me on this 29th day of April, 2004

_____
Michael Sullivan
Assistant Attorney General

# STATE OF CONNECTICUT

PSYCHIATRIC SECURITY REVIEW BOARD

RE:   VINCENT ARDIZZONE

Psychiatric Security Review Board
ID Number: 0221   DOB: 08/20/61
Document Number: 02-06-3162

## MEMORANDUM OF DECISION

On December 14, 2001 and May 3, 2002, the Psychiatric Security Review Board held a hearing to review the status of Vincent Ardizzone, pursuant to Connecticut General Statutes, Section 17a-585.

Vincent Ardizzone was committed to the jurisdiction of the Psychiatric Security Review Board on March 5, 1993 by the Ansonia/Milford Superior Court for a period of time not to exceed 35 years after he was acquitted by reason of mental disease or defect of the charge of Murder.

At the December 14, 2001 proceeding, the parties appearing were State's Attorney Mary Galvin, representing the Ansonia-Milford Judicial District; Vincent Ardizzone, the acquittee, represented by Deputy Assistant Public Defender Suzanne L. McAlpine. The witnesses were Catherine Levanti, MS, RNC; Virginia Johnson, M.D., and Michael Lah, Ph.D., of the Dutcher Service of Connecticut Valley Hospital; and Paul Amble, M.D., of the Division of Forensic Services, Department of Mental Health and Addiction Services.

The hearing was continued after the December 14, 2001 proceeding in order for the acquittee's counsel to have an independent evaluation performed. At the end of the December 14, 2001 proceeding, Board members Robert Berger, Chair, John Ryan, M.A., Janet Williams, M.D., Sylvia Cancela and Susan Blair, based on the evidence presented that day, found that Vincent Ardizzone, based on his mental status, represented a danger to other patients at the Dutcher Service to the extent that he required maximum security confinement pending the presentation of further evidence to the Board. Therefore, on December 14, 2001, Vincent Ardizzone was ordered confined in maximum-security at the Whiting Service of Connecticut Valley Hospital.

At the May 3, 2002 proceeding, the parties appearing were State's Attorney Mary M. Galvin, representing the Ansonia-Milford Judicial District; Vincent Ardizzone, the acquittee, represented by Deputy Assistant Public Defender Suzanne L. McAlpine. The witnesses were Michael Lah, Ph.D., of the Dutcher Service of Connecticut Valley Hospital; Marc Hillbrand, Ph.D., of the Whiting Service of Connecticut Valley Hospital, and Peter Zeman, M.D., an independent expert for the acquittee.

At the December 14, 2001 proceeding, Catherine Levanti testified on the mental condition and course of treatment of Vincent Ardizzone as follows: Mr. Ardizzone continues to display significant difficulties in all aspects of his treatment program since being transferred to the Dutcher Service from the Whiting Service on August 20, 1998. Most recent difficulties include an incident on December 5, 2001 where he did not adhere to the hospital mail procedure - instead of putting his mail in the mailbox on the unit; he put his mail in the mailbox located in the first floor lobby. In response to questioning why he did this against unit rules, he replied that what he was mailing was personal and he did not want anyone to know he was sending letters to his attorney or to the Psychiatric Security Review Board. A second incident occurred on December 11, 2001. At that time, he informed staff while at a meeting that he had not heard

from his daughter but that when his mother visited he gave her a letter for his daughter. He stated that his mother was going to mail the letter to his ex-wife's mother. This arrangement is in direct violation of the legal agreement as it relates to correspondence to his daughter; he is legally only to have correspondence with his daughter through the attorney's representing him in this civil matter and his daughter's guardian, his ex-wife. Mr. Ardizzone denied any knowledge of this even though it is part of his treatment plan, which he signed and has a copy of. In response to being reminded that this was part of his divorce decree as it relates to him not having direct contact with his daughter, he stated "that was a long time ago and rules don't last a long time." These instances are just two examples of Mr. Adrizzone's difficulty following the rules of his treatment program, the unit and the hospital. He also has problems in the following areas: 1) controlling his behavior with women; 2) gambling in the hospital; 3) taking responsibility for and examining his behavior, and 4) making consistently genuine efforts to take advantage of available and recommended treatment opportunities.

Dr. Johnson, Mr. Ardizzone's treating psychiatrist at the Dutcher Service, testified on Mr. Ardizzone's mental status as follows: Upon mental status examination, he appears with a blunt mood and affect. He is oriented to time and place. His memory is intact. Mr. Ardizzone shows poor insight and judgment. He continues to rationalize and show extensive minimization and denial of his problems. Although he is not grossly psychotic under stress, he recently demonstrated paranoid thinking. Mr. Adrizzone's current diagnoses are Chronic Paranoid Schizophrenia, Episodic With No Interepisodic Residual Symptoms; Impulse Control Disorder, Not Otherwise Specified; Alcohol Abuse, In Remission, In a Controlled Environment, and Mixed Personality Disorder With Borderline and Antisocial Traits. He receives the antipsychotic medication Prolixin and also takes medication for his high cholesterol. He has been offered the mood stabilizers Depakote and Lithium to determine if one of these medications would assist him with impulse control. To date, he has refused to take either of these medications. Dr. Johnson opined that the treatment team continues to be concerned about Mr. Ardizzone's relentless rule breaking, poor behavioral controls and interfering with other patients' treatments. His recent actions led to a near decompensation of both himself and another patient. It is not clear if his current level of supervision is sufficient. Mr. Ardizzone has had a breakthrough of paranoid symptoms even while on antipsychotic medications. Dr. Johnson opined that Mr. Ardizzone is an acquittee who has psychiatric disabilities to the extent that his discharge from the Board or conditional release from the hospital would constitute a danger to himself or others.

There was testimony by Drs. Lah and Johnson concerning Vincent Ardizzone's behavior, specifically his sexual relationships with other patients and his gambling while at the hospital. Mr. Ardizzone became involved with a female patient on the unit. As a result of this relationship, he entered into a boundary contract concerning this woman. He was not compliant with his contract despite multiple attempts by staff and much coaching and prompting to adhere to the contract. There were also incidents of Mr. Ardizzone becoming involved with another female patient on the unit who he bought gifts for, which is also in violation of hospital rules. There was testimony concerning the past violation of hospital rules of Mr. Ardizzone sharing pornographic material and pictures with other patients. In addition, Mr. Ardizzone allegedly engaged in phone sex with a woman. He has also engaged in gambling while at the hospital. Currently, he is not able to attend Gambler's Anonymous due to his privilege level not allowing for that. Mr. Ardizzone had to be reminded not to sell cigarettes to other patients, as it is a violation of hospital rules. In addition, he had to stop bringing in food for other patients.

Dr. Amble testified on his opinion concerning Vincent Ardizzone. Dr. Amble opined that Mr. Ardizzone would be best treated on an all-male unit at the Whiting Service. He based this opinion on the litany of concerns and problems with Mr. Ardizzone on his current treatment unit, where he has taken advantage of female patients who are at a lower level of functioning than he functions. The freedoms offered to patients on that unit have been used by Mr. Ardizzone or at least suspected to be used by him to cheat other patients out of money by selling cigarettes to them. Dr. Amble further opined that as a result of evaluating Mr. Ardizzone over a lengthy period of time, he had concerns about moving him from the maximum-security facility to the Dutcher Service in the first place, but was willing to give Mr. Ardizzone the benefit of the doubt. Mr. Ardizzone superficially appears highly functional and socially adept, so he was provided an opportunity to move to the Dutcher Service. Mr. Ardizzone has not used this opportunity; rather, he has demonstrated a consistent level of inappropriate behaviors that now requires him to be transferred to a more secure unit. These behaviors demonstrate that Mr. Ardizzone has a level of character pathology and poor level impulse control, that, ironically, makes him lower functioning than he appears to be and lower functioning than the unit is designed to treat. Dr. Amble opined that Mr. Ardizzone could be a danger to vulnerable patients. In addition, Mr. Ardizzone's violation of the rules, as it relates to contacting his daughter, raises concerns about his daughter's safety.

At the May 3, 2002 proceeding, Dr. Zeman testified on his evaluation of Vincent Ardizzone done at the request of his counsel as follows: Mr. Ardizzone's Schizophrenia is not the cause of his unacceptable behavior; this illness is under control with medication. Rather, his impulsivity and poor judgment result from unresolved personality traits. Upon mental status examination, Mr. Ardizzone showed no evidence of suicidal or homicidal thoughts. He demonstrated no evidence of an emotional state, which would predispose him to have either self directed or outwardly directed physically harmful or assaultive behavior(s). Dr. Zeman opined that Mr. Ardizzone is not presently so violent as to require treatment in maximum security. He could safely be treated on one of the units at the Dutcher Service that is an all male unit. Dr. Zeman recommended that Mr. Ardizzone not be on a co-ed unit so he would have an opportunity to strengthen and improve his behavioral controls without the ongoing negative stimulus of female patients.

At the May 3, 2002 proceeding, Dr. Hillbrand testified on the current status of Vincent Ardizzone as follows: Mr. Ardizzone has moved quickly up the privilege system at Whiting since his admission in December. He is currently on a Step 4 privilege level. He is actively involved in therapeutic activities. At first his viewpoint about his admission to maximum security was that it was not fair and it was the fault of other people and not his. Gradually, he has come to realize his responsibility—he made mistakes and violated hospital rules and transfer to Whiting was a consequence of his rule violations. He was transferred to another unit at Whiting in April. He made a good adjustment to this transfer. Mr. Ardizzone remains free of psychotic symptoms and there is no evidence that he has engaged in gambling activities while at Whiting. In addition, he has not been inappropriate with female staff or patients while at Whiting. Dr. Hillbrand opined that both he and the hospital believe that Mr. Ardizzone is making progress in his treatment at Whiting, but, at this point in time, they are not ready to make a recommendation that he be transferred to the Dutcher Service.

Based on the evidence presented, the Board finds the fact that Vincent Ardizzone remains mentally ill with the diagnoses of Schizophrenia, Paranoid Type, Episodic With No Interepisodic Residual Symptoms; Alcohol Dependence, In a Controlled Environment; Impulsive Control

Disorder, Not Otherwise Specified; and Mixed Personality Disorder with Borderline and Antisocial Traits. Vincent Ardizzone, based on his mental status and the dangerousness that he poses to others due to that mental condition, continues to require inpatient treatment and supervision. The Board finds, based on Vincent Ardizzone's violation of hospital rules and placing other persons, in particular more vulnerable psychiatric patients and potentially his minor aged child, in jeopardy, that he requires confinement in a maximum-security setting at this point in time. Vincent Ardizzone would continue to pose a danger to others if he were in a less restrictive psychiatric setting. Based on the evidence, the Board would recommend that Vincent Ardizzone reside on an all male unit.

Based on the preceding facts, the Board finds that Vincent Ardizzone is a person who should be confined. He has a psychiatric disability to the extent that his discharge or conditional release would constitute a danger to himself or others. Further, the Board finds that Vincent Ardizzone is so violent that he requires confinement within a maximum-security setting.

## ORDER

Pursuant to Connecticut General Statutes, Sections 17a-584, 17a-586 and 17a-599, the Psychiatric Security Review Board hereby ORDERS:

1. Vincent Ardizzone shall remain confined at the Whiting Service of Connecticut Valley Hospital for the purposes of care, custody and treatment. This order of confinement pursuant to CGS Section 17a-584 may be appealed in accordance with the provisions of Section 17a-597 and Chapter 54 of the Connecticut General Statutes.

2. Further the Board orders that the confinement of Vincent Ardizzone be under maximum-security conditions.

3. The Whiting Service of Connecticut Valley Hospital shall report every six months to the Psychiatric Security Review Board on the mental condition, mental status, and course of treatment of Vincent Ardizzone, pursuant to Connecticut General Statutes, Section 17a-586. The next such report is due no later than June 30, 2002.

4. The Whiting Service of Connecticut Valley Hospital shall notify the Psychiatric Security Review Board at any time there is consideration for Vincent Ardizzone to have visitation with his child prior to the commencement of such visitation. Vincent Ardizzone is not to be allowed visitation with his child until this issue is considered by both the court of competent jurisdiction and the Psychiatric Security Review Board.

Dated: June 7, 2002                          Psychiatric Security Review Board

                                             *Martha E Lewis /ms*

                                             Martha E. Lewis
                                             Executive Director
                                             On Behalf of the
                                             Psychiatric Security Review Board

pc  State's Attorney Mary M. Galvin
    Deputy Assistant Public Defender Suzanne L. McAlpine
    Michael I. Lah, Ph.D.
    Marilyn R. Smith-Cotterell, LCSW
    DMHAS Conditional Release Service Unit
    Victim
    Vincent Ardizzone