UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2004 MAY 21 P 2: 07
U.S. DISTRICT COURT
HARTFORD, CT.

| | | |
|---|---|---|
| **VINCENT ARDIZZONE** | : | **CASE NO: 3:02-CV-1658 (AWT)** |
| PLAINTIFF | | |
| -AGAINST- | : | |
| **CONNECTICUT PSYCHIATRIC** | | |
| **SECURITY REVIEW BOARD** | : | May 11th, 2004 |
| DEFENDANT | | |

## MEMORANDUM OF LAW IN SUPPORT OF THE PLAINTIFFS OBJECTION TO DEFENDANT'S OPOSITION TO HIS SUMMARY JUDGMENT AND OBJECTION TO THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to the Federal Rules of Civil Procedure the plaintiff Vincent Ardizzone respectfully opposes the defendant, Psychiatric Security Review Boards opposition to his Amended Summary Judgment filed March 8th, 2004. The plaintiff Vincent Ardizzone, who is pro se, and is confined in a hospital for mental illness respectfully, submits this brief in opposition to the defendant's opposition to his Summary Judgment and to the defendant's Summary Judgment, and Statement In Support of its Summary Judgment.

### STANDARD FOR SUMMARY JUDGMENT

Under Rule 56 (c), summary judgment shall be granted to the moving party" if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law."

1

**BACKROUND**

This case was filed with this court on September 17th, 2002, in accordance with the Federal Declaratory Judgments Act, 28 U.S.C., Section 2201. The plaintiff filed a Summary Judgment dated, February 11, 2003. The defendant the Psychiatric Security Review Board filed a Motion to Dismiss or Stay Action. On September 23, 2003, the Court ruled and ordered the defendants' Motion to Dismiss denied without prejudice, the Motion to Stay was granted, the plaintiffs' Motion for Summary Judgment was denied without prejudice. The Court, Honorable Alvin W. Thompson, United States District Court Judge order the parties to file within 30 days, setting forth a proposal (or their prospective proposals) as to how this case should proceed.

Both parties complied with the order. The defendant in response to the Court's request for proposals as to how this case should proceed, proposed the following:

1. The Defendant supported the District Court's denial of the plaintiff's Summary Judgment Motion and opposed the plaintiff's proposal to "reinstate" said motion;

2. Based on the Dyous decision and the plaintiff's decision not to appeal the Superior Court's dismissal of his administrative appeal, the defendant no longer wished to advance on the three basis for abstention set forth in it's Motion to Dismiss or Stay action in this case; and

3. The defendant recommends the Court requiring the filing of any dispositve motions in this case by February 1, 2004.

2

**ARGUMENT I:**

**THE DEFENDANTS FAILED TO DISPUTE THE FACTUAL ISSUES AND DID NOT PLEAD BY FAILING TO FILE A RESPONSE TO THE PLAINTIFF'S ACTION OR RAISE ANY SPECIAL DEFENSES IN THIS CASE. THEIR OPPOSITION TO THE PLAINTIFF'S AMENDED MOTION FOR SUMMARY JUDGMENT, AND THEIR SUMMARY JUDGMENT IS SOLELY BASED THE PLAINTIFF'S ERROR IN NAMING THE DEFENDANT'S IN THE WRONG CAPACITIES AND NAMING THE CONNECTICUT PSYCHIATRIC SECURITY REVIEW BOARD. WHICH IS A STATE AGENCY AND THAT THE PLAINTIFF'S CLAIMS ARE BARRED BY THE ELEVENTH AMENDMENT, SOVEREIGN IMMUNITY, BECAUSE THE PLAINTIFF IS SEEKING RETROACTIVE RELIEF IN THE FORM OF A DECLARATORY JUDGMENT.**

The defendant has never filed an answer admitting or denying the plaintiff's allegations to the plaintiff's Federal declaratory Judgment, that the plaintiff filed on September 18th, 2002, in accordance with the Federal Declaratory Judgments Act, 28 U.S.C., Section 2201.

The Defendant's filed their Opposition Motion to the plaintiffs' Amended Summary Judgment at least 18 days after the 21-day dead line for filing an answer opposing the plaintiffs' Amended Summary Judgment Motion. The defendant's claimed in their first opposition Motion that the plaintiff filed 8 days late after the dead line of February 1st, 2004. The Court, the Honorable District Court Judge Alvin W. Thompson issued a scheduling order stating that the court will consider the plaintiff's Summary Judgment Motion (Doc. # 27) filed on March 8th, 2004. The defendant was granted an extension of time to and including April 30th, 2004, to file it's opposition to the plaintiff's Motion for Summary Judgment and to file it's cross Motion for Summary Judgment.

The defendant's assert that the declaratory relief the plaintiff is seeking runs afoul of the Eleventh Amendment. As it is against the state through a state agency and the defendant's, state officials,

3

and does not fall with the exception to the doctrine; i.e. seeking prospective injunctive relief against the state for alleged violations of the Federal Constitution. The defendant cites Pennhurst State School and Hospital V. Halderman, 465 U.S. 89, 121 (1984)

In Kentucky v. Grahm, 473 U.S. 159, 105 S. Ct. (1985), "you can sue a state official, but not the state itself-for an injunction in their official capacity." In Hughes V. Rowe, 449 U.S. 5, 9, 101 S. Ct. 173 (1980) and Haines V. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594 (1972), "...courts generally hold pro se complaints to less stringent standards than formal pleadings drafted by lawyers.

Under Rule 56 (c), summary judgment shall be granted to the moving party" if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law."

The defendant's failed to show in their Motion for Summary Judgment, and their Rule 56(a)(1) Statement in Support of its Motion for Summary Judgment, that there is no genuine issue as to any material fact and that they are entitled to Judgment as a matter of law. A "material" fact is one that "might effect the outcome of the suit under the governing law.... factual disputes that are irrelevant or unnecessary will not be counted. Anderson V. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The defendant's assert in their Rule 56(a)(1), Statement in support of their Motion for Summary Judgment a statement of material facts that they claim are not genuine issues to be tried. The Defendants State;

4

1. On January 12, 1993, the plaintiff was acquitted by reason of mental disease or defect.

2. On March 5th, the plaintiff was committed to the jurisdiction of the defendant's.

3. On August 20th, 1998, the plaintiff was transferred from the Whiting Forensic Division of Connecticut Valley Hospital, a maximum-security psychiatric facility.

4. On December 14th, 2001, the defendant held a hearing to review the plaintiffs' status pursuant to Connecticut general Statutes, Section 17a-585.

5. At the conclusion of the hearing on December 14th, 2001, the defendant's immediately ordered the transfer of the plaintiff to the maximum-security facility, Whiting Forensic Division.

6. On November 25th, 2003, the plaintiff was transferred from Whiting Forensic Division to Dutcher Hall and has remained there since that time.

None of the facts in the defendant's Rule 56(a)(1) statement including the ones the plaintiff has omitted are relevant or are they genuine issues of material facts that "might effect the outcome of the suit under the governing law.

The defendant's submit as exhibits two affidavit's from Marilyn Smith–Cotterell, the Forensic coordinator of the Whiting Forensic Division at the Connecticut Valley Hospital and Ellen Weber, Executive Director of the Psychiatric Security review Board, who has only served in her capacity since March 1st, 2004. The affidavits are irrelevant, because they do not have any relation to the

5

material facts of this case. These individuals in their affidavits state their age and their occupation. That the plaintiff was transferred from Dutcher Hall on December 14, 2001, to Whiting Forensic Division at Connecticut Valley Hospital and that the plaintiff was transferred back to Dutcher Hall at Connecticut Valley Hospital on November 25th, 2003, more than 24 months later. Ellen Webers' affidavit attest that the <u>Memorandum of Decision</u> dated June 7th, 2002 attached to the defendant's Motion, regarding the plaintiff, is a true and accurate copy.

The defendant's failed to dispute any of the genuine issues of material facts regarding the allegations that the plaintiff was transferred to a maximum security facility without first being giving timely notice or allowed to be heard. That the defendant's deliberated before the hearing was called to order, before any evidence was heard, and that at the hearing of May 3rd, 2002, the defendant's heard evidence that the plaintiff was not violent, yet rendered a decision that he was "So Violent" that he required maximum-security confinement and ordered his continued confinement in maximum-security.

A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson V. Liberty Lobby, Inc.</u>, 477 U.S. at 248 (1986).

**ARGUMENT I I:**

**THE PLAINTIFF HAS STANDING TO SUE THE DEFENDANTS, BECAUSE THEIR CONDUCT CAUSED ACTUAL INJURY BY CAUSING THE PLAINTIFF TO BE CONFINED IN A MAXIMUM-SECURITY FACILITY WHERE HE COULD NOT BENEFIT FROM TREATMENT IN THE LEAST RESTRICTIVE ENVIRONMENT. WHERE HE WAS SUBJECTED TO BEING CONFINED WITH THE MOST VIOLENT MENTALLY ILL PATIENTS AT CONNECTICUT VALLEY HOSPITAL FOR MORE THAN 23 MONTHS.**

6

Declaratory relief will redress the injuries caused. The plaintiff is not seeking an injunction and on exhibit with this Court are the actual certified transcripts of the proceedings of November 14th, 2001, and May 3rd, 2002. <u>Allen V. Wright</u>, 468,U.S. 737, 751, 104 S. Ct. 3315 (1984). <u>Valley Forge Christian College V. Americans United for Separation of Church and State</u>, 545, U.S. 464, 472, 102 S. Ct. 752 (1982).

The plaintiff moved for Summary Judgment to dispose of his case in his favor as a matter of law. There is no factual dispute, nor did the defendants dispute the facts in accordance with Rule 56(c) of the Federal Rules of Civil procedure. In fact the defendants after failing to file an answer or raising the defense of Sovereign Immunity in their answer to the plaintiffs' Federal Declaratory Judgment, filed their opposition to the plaintiffs' Motion for Summary Judgment stating that it was not filed before the deadline of February 1st, 2004. The defendant's opposition motion was filed approximately 18 days after the dead line giving to respond to the plaintiff's Amended Motion for Summary Judgment filed March 8th, 2004.

The defendant's Motion for Summary Judgment and opposition to the plaintiffs' Motion for Summary Judgment both dated April 30th, 2004, assert that their argument is primarily based on the principle that the Eleventh Amendment and applicable principles governing the issuance of declaratory judgment prevent the plaintiff's request for declaratory judgment. The defendant's assert that in essence that the Eleventh Amendment prevents the award of a declaration that the prior conduct of state officials violated federal law. The defendant justifies this claim by stating that the plaintiff has named the defendant's in their wrong capacity and has already been returned to the least restrictive setting and that he can't seek retroactive relief.

7

The plaintiff is seeking a declaration that his Federal Constitutional rights were violated under the Fourteenth Amendment to the United States Constitution. His allegations, which have never been disputed by the defendants even prior to his Motion for Summary Judgment, included violations of procedural as well as substantive due process. The plaintiff alleged gross violations that are a matter of public record. (See exhibits A and B) a true and attested transcript of the proceedings that resulted in the alleged violations on November 14th, 2001, and May 3rd, 2002. The plaintiffs' allegations include the following;

a)  That on August 20, 1998, he was transferred to a less secure setting, the Dutcher Services from a maximum security setting operated by the Connecticut Department of Mental Health after a finding by the defendant's that he was no longer "so violent" in accordance with the Connecticut General Statutes, Section 17a-599.

b)  During the time he was in the Dutcher Services, he was actively engaged in treatment and not violent.

c)  On December 14, 2001, the Connecticut Psychiatric security Review Board held a hearing in regards to his status pursuant to Connecticut General Statutes, Section 17a-585.

d)  At the hearing on December 14th, 2001, his treating psychiatrist, Dr Virginia Johnson testified and concluded that he was an acquittee who has psychiatric disabilities to the extent that his discharge from the jurisdiction of the Connecticut Psychiatric Security Review Board or conditional release from the hospital would constitute a danger to himself or others and he could not be adequately controlled with available supervision on a conditional release.

8

e) His treating psychiatrist did not conclude or recommend in accordance with the Connecticut General Statutes, Section 17a-599, that he was "so violent" as to require confinement under conditions of maximum security. (See exhibit A, transcript of hearing dated December 14, 2001).

f) On December 14th, 2001, defendant Robert Berger agreed to continue the matter to a later date; however, immediately after the testimony by his treating psychiatrist the defendant Robert Berger, prior to any formal deliberations by a full quorum of the Connecticut Psychiatric Security Review Board, ordered him to be immediately confined in maximum security. (See exhibit A, transcript of hearing dated December 14, 2001).

g) At the hearing that commenced on May 3, 2002, which was a continuation from the hearing of December 14, 2001, none of the testimony by clinicians Dr. Johnson, Dr. Amble, Dr. Lah, Dr. Zeman, or Dr. Hillbrand contained any evidence that the plaintiff was violent. (See exhibit B, transcript of hearing dated May 3, 2002).

h) On June 7, 2001, the defendant, Connecticut Psychiatric Security Review Board issued a Memorandum of Decision finding that the plaintiff was "so violent" that he required confinement within a maximum security setting. (See exhibit C, Memorandum of Decision dated June 7, 2002).

i) The plaintiff was confined in a facility for individuals that are violent. When he wasn't violent, this fact was presented by testimony during both hearings of December 14th, 2001, and May

9

3rd, 2002. This deprived the plaintiff of a liberty created by state statute, Connecticut General Statutes, Section 17a-599, to appropriate psychiatric treatment in the least restrictive environment in violation of the Fourteenth Amendment of the United States Constitution.

The plaintiff is still under the jurisdiction of the defendants. Even though he has been returned to the least restrictive environment. He still faces the possibility that without the relief sought. A declaratory judgment, would allow the defendants at any time during any hearing in the future to return him to a maximum security environment, violating the plaintiff's rights once again under the Fourteenth Amendment to the United States Constitution, based on any allegations. Simply because the plaintiff was returned to Dutcher Hall does not moot his claim for declaratory relief. This was not a short lived legal violation of the plaintiff's Federal Constitutional Rights, and is not over with and is capable of repetition, and should not evade judicial relief if there is a reasonable likelihood that it will recur. Honing V. Doe, 484 U.S. 305, 318, 108 S. Ct. 592 (1988).

The plaintiff asserts that the defendants should not be allowed to circumvent the Federal Rules of Civil Procedure by failing to plead by not filing a responsive pleading and delay a judicial remedy sought by the plaintiff in the form of declaratory relief to secure his rights. Then after ordering him returned to the least restrictive setting oppose his Motion for Summary Judgment. Cross-file for Summary Judgment solely based on the claim of sovereign immunity based on the plaintiff naming the defendant's in their wrong capacity. These issues could have been raised in a Motion to Dismiss or a Motion for Judgment on the pleadings in accordance with Rule 12 of the Federal Rules of Civil Procedure.

The defendants' further and lastly assert that the bar of the Eleventh Amendment is one of subject matter jurisdiction. <u>Pennhurst State School and Hospital V. Halderman,</u> 465 U.S. 89, 99, n 8 (1984), and asserts that the Court must dismiss the plaintiffs' action for lack of subject matter jurisdiction. The defendant's are stating that the court should dismiss this action, however, not on the merits of the plaintiff's claims. The granting of a Motion For Summary Judgment would have to be on the merits of the plaintiffs' claims, because it is a formal disposal of the case on the merits..

The Federal Declaratory Judgments Act of 1934 permits a federal court to "declare the rights of a party whether or not further relief is or could be sought.

The plaintiff is not bringing this case in accordance with 42 U.S.C., Section 1983. The plaintiff named the members of the Psychiatric Security review Board. The plaintiff alleges that under the Fourteenth Amendment to the United States Consecution that his rights were violated. The violations he alleges are not state law violations, however, federal violations of procedural and substantive due process in accordance with the Fourteenth Amendment. The plaintiff asserts that:

He is an insanity acquittee who has a liberty created by state statute to be free from maximum-security confinement. A state law creates a liberty or property entitlement if it limits the discretion of officials. <u>Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 462. 109 S.Ct. 1904 (1989).</u>

The most common way of limiting official's discretion is by using mandatory language in connection with requiring substantive predicates. <u>Hewitt v. Helms, 459 U.S. 460, 472, 103 S.Ct. 864 (1983).</u> Mandatory language often means words like "shall" "will" or "must". Hewitt v. Helms, 459 U.S. at

11

371; see also Board of Pardons v. Allen, 482 U.S. at 378 ("statutes with "shall" and "if" "when", or "subject to" have the same effect as statutes with "shall" and "unless").

Section 17a-599 of the Connecticut General Statutes contains mandatory language and a substantive predicate, "it shall make a further determination of whether the acquittee is <u>so violent</u> as to require confinement under condition of maximum security."

In order for the plaintiff's condition of confinement to qualify as a constitutionally protected liberty, a Connecticut statute, judicial decree or regulation must assure the interest. <u>Wheway v. Warden</u>, 215 Conn. 418, 432 (1990).

The plaintiff has a protected liberty interest to be placed in the least restrictive environment. Insanity acquittees have no recognized Federal Constitutional right to be placed in the least restrictive environment. <u>See Kulab v. Berkelhammer</u>, 88 F.3d 63, 73 (2nd. Cir. 1996) "However, a state may create such a liberty interest protected under the Fourteenth Amendment by regulations, statutes, or court orders mandatory in character." A state may give rise to a liberty interest subject to due process protections based on the use of mandatory language coupled with "substantive predicates", raising a presumption that a designated right or privilege will be granted when the designated findings are made. See <u>Vinceno V. Warden</u>, 26 Conn. App. 132, 138-40, 599 A.2d 31 (1991), citing <u>Greenholtz v. Nebraska Penal Inmates</u>, 442 U.S. 1 (1979) and <u>Board of Pardons v. Allen</u>, 482 U.S. 369 (1987). <u>See also Sandin v. Conner</u>, 515 U.S. 472, 479 (1995) ("[T]he word shall in the statute created a legitimate expectation." A liberty interest protected by the due process clause of the Fourteenth Amendment may arise out of state law. Vitek<u> v. Jones,</u> 445 U.S. 480, 488-90 (1980).

12

General Statutes, Section 17a-599 is mandatory as the statute includes the word "shall" in its directive. Once the court or board determines that the acquittee is a person who should be confined, a further determination "shall" be made as to "whether the acquittee is so violent as to require confinement under conditions of maximum-security." Section 17a-599 contains both the required mandatory language and substantive predicate. As this statute is mandatory, it creates a right, a protected liberty interest of the plaintiff, to be confined in the least restrictive setting. As such, a denial of this right would be a constitutional deprivation.

Other states have found that a person is entitled to be confined to the least restrictive setting either through statutes or common law. The District of Columbia recognizes that "one who by reason of insanity is acquitted of a crime and...is committed to a mental hospital is entitled to not only treatment, but to treatment in the least restrictive alternative consistent with the legitimate purposes of a commitment." Jackson v. United States, 641 A2d 454, 457 (D.C., 1994). The "least restrictive language" means "that the treatment must be the best treatment for the acquittee that protects the public safety." Id. (emphasis added).

Illinois has codified a right to the least restrictive setting in section 2-102 (a) of the mental health code which states that "[a] recipient of services shall be provided with adequate and humane care and services in the least restrictive environment." 405 ILCS 5/2-102(a) (2003). A111 "The mere fact that plaintiff's have been involuntarily committed as NGRI acquittees does not deprive them of substantive liberty interests under the fourteenth amendment." C.J. v. Dept. of Mental Health and Developmental Disabilities, 296 Ill. App. 3d 17, 27, 693 N.E. 2d 1209, 1215 (1998) (citing Vitek v. Jones, 445 U.S. 480, 491 (1979). "Liberty from bodily restraint always has been recognized as the

13

core of the liberty protected by the due Process Clause from arbitrary governmental actions. C.J., 693 N.E. 2d at 1215 (quoting Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 18 (1979) (Powell, J., concurring in part and dissenting in part). Moreover, "[I]n Foucha v. Louisiana, the supreme Court recognized that freedom from bodily restraint is a liberty interest that applies to insanity acquittees. Foucha v. Louisiana, 504 U.S. 71, 80 (1992)." C.J., 693 N.E. 2d at 1216. Even when acquittees are found to be in need of a secure placement, the "secure setting is in effect the least restrictive environment permitted for NGRI acquittees under the law...." C.J., 693 N.E. 2d at 1213.

In New York, the case of insanity acquittees, the legislature has outlined procedures for insuring that people committed are not held in a secure facility when they can be safely treated in a less restrictive environment. People v. Betances, 176 Misc. 2d 66, 71, 671 N.Y.S. 2d 930 (1998). "There is no logical reason to believe that, in prescribing care and treatment at an appropriate institution, the legislature intended harsher treatment for a patient who is merely accused of a nonviolent criminal act, but not proven to have committed any crime at all, than one found not responsible by reason of mental disease or defect." Id.

In <u>Vitek v. Jones 445 U.S. at 483 n.1. a statute provided that if a doctor finds that a prisoner has a mental disease or defect that cannot be treated in a prison, the director may transfer her for treatment.</u> This language along with prison practice created an "objective expectation" that the prisoner would not be transferred unless a doctor found that she had such a mental condition. Thus, a liberty interest was created. Accord, Mayes v. Trammell, 751 F.2d 175, 178 (6th Cir. 1984) (regulation stating that parole release "may" be denied "if" certain conditions exist is the same as one saying parole "shall" be granted "unless" those conditions exist).

14

The defendant denied the plaintiff procedural due process as well. The basic requirement of due process is the right to notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." Logan v. Zimmerman Brush Co., 455 U.S. 422, 579, 95 S.Ct. 111148 (1982). Goss v. Lopez, 419 U.S. 565, 579, 95 S. Ct. 729 (1975).

The defendant held a hearing in accordance with the Connecticut General Statutes, Section 17a-585. The defendant failed to give notice that the defendant was considering maximum-security confinement. The plaintiff filed two motions with the defendant requesting a continuation and a separate examination. The defendant, Robert Berger, Chairman of the Connecticut Psychiatric Security Review Board made the following comments during the hearing on December 14th, 2001, that clearly show a violation of procedural due process.

The following is from the transcript of the December 14th, 200,1 hearing page 5, lines 7 through 24, page 6, lines 1 through 10:

The transcript is on file at the Court as well as on file with counsel for defendant.

Plaintiffs' defense counsel, Ms. McAlpine: "My second request is that the Board does not deter any decision until after the independent examiner has had the opportunity to examine Mr. Ardizzone. And also this hearing was called less than two weeks ago, as I recall, and if we could just put on the record the date that the hearing was actually scheduled."

Chairman Berger, defendant: "I'm sorry, I didn't - -"

15

Ms. McAlpine: "I'm sorry, the date that the hearing was actually scheduled."

Chairman Berger, defendant: "I don't understand the nature of your question."

Ms. McAlpine: "The date that - - not the date of the hearing, but the date that the hearing was scheduled."

Chairman Berger, defendant: "The date the hearing was scheduled was the date I received the additional report indicating what Mr. Ardizzone's conduct was in the hospital. I do not recall what that was - -"

Ms. Lewis: Executive Director of the Connecticut Psychiatric Security Review board: "It was by the Board - - it was the Board's meeting November 30."

Chairman Berger, defendant: "The minute I read that report, I said we need to have a hearing. As a matter of fact, I'll be honest with you, <u>my initial reaction was why isn't Mr. Ardizzone in Whiting Forensic Institute right now, and Miss Lewis informed me that that couldn't be done without a hearing, and I said hold a hearing. Does that answer your question ?"</u>

The following is also from the transcript of the hearing of December 14th, 2001, which clearly shows that the procedural due process rights of the plaintiff were violated. Page 59, lines 10 through 19, and page 60, lines 1 through 7.

Chairman Berger, defendant: "Thank you. We're going to continue this matter for the purpose of hearing the independent evaluator's testimony at some future time. <u>But in the interim, despite defense counsel's request, the Chair by the power that is vested in him, after consultation with the other members of the Board present, is going to declare that Mr. Ardizzone be transferred</u>

16

<u>immediately from CVH to Whiting Forensic and that he be taken into custody right now for that purpose."</u>

Chairman Berger, defendant: "With that, we thank you all for attending - -"

Ms. McAlpine: " Well, may I - -"

Chairman Berger, defendant: - - "The hearing is continued - -

Ms. McAlpine: "Before you close, may I ask, Chairman Berger, when the Board has had the opportunity to deliberate on this given the fact that the testimony was just - -"

Chairman Berger, defendant: "We deliberated on this before and I just asked them whether they would approve my decision to do this, and they indicated they did."

The defendant the Connecticut Psychiatric Security Review Board denied the plaintiff procedural and substantive due process when they rendered a decision on December 14, 2001, and on May 3, 2002 to confine the plaintiff under conditions of maximum security absent any evidence that he was so violent, and strictly based on allegations that the plaintiff was breaking hospital rules. That decision was clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; the decision was arbitrary and/or capricious and/or characterized by abuse of discretion and/or a clearly unwarranted exercise of discretion; the decision contains no factual basis to support the defendant's decision that Whiting Forensic Division is the least restrictive environment necessary for the plaintiff thereby depriving the plaintiff of the right to a meaningful review under principles of due process of law; the extent to which the defendant has construed "so violent as to require confinement under conditions of maximum security" to include the plaintiff within the class of individuals to which it applies violates Amendment Fourteen of the United States Constitution.

## **CONCLUSION**

For the forgoing reasons the plaintiff Vincent Ardizzone respectfully requests that the defendant's Motion for Summary Judgment and opposition to his Summary Judgment be denied, and that the Court grant the plaintiff's Motion for Summary Judgment and grant the declaratory relief sought as a matter of law;

1. That the defendant violated the plaintiff's procedural and substantive due process right's on December 14th, 2001, and on May 3rd, 2002.
2. Issue a binding legal statement as to the constitutional rights of the plaintiff in regards to his liberty to be in the least restrictive setting, especially the Dutcher Services in accordance with the Connecticut General Statutes, Section 17a-599.

3. Issue a binding and legal statement as to the constitutional rights of the plaintiff as to his liberty to be free from maximum-security unless it is evidenced that he is "so Violent" as to require maximum-security confinement in accordance with the Connecticut General Statutes, Section 17a-599.

Vincent Ardizzone, Plaintiff, pro se

*Vincent Ardizzone*

Connecticut Valley Hospital<br>
Dutcher Hall<br>
P.O. Box 351, Silver Street<br>
Middletown, Connecticut 06457

## CERTIFICATION

I Vincent Ardizzone hereby certify that a copy of the foregoing Memorandum of Law in Support of the plaintiffs Objection to defendant's Opposition to his Summary Judgment and Objection to the defendant's Motion for Summary Judgment was mailed in accordance with Rule 5 (B) of the Federal Rules of Civil Procedure on this 12Th day of _____May_____ 2004, first class postage prepaid to:

Michael Sullivan<br>
Assistant Attorney General<br>
55 Elm Street<br>
P.O. Box 120<br>
Hartford, Connecticut 06141-0120

Vincent Ardizzone

*Vincent Ardizzone*

Connecticut Valley Hospital<br>
Dutcher Hall<br>
P.O. Box 351, Silver Street<br>
Middletown, Connecticut 06457

19